# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKY LYNNE KELLY,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | 1:11-cv-00738-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE ALJ'S DECISION BE REVERSED AND THE CASE BE REMANDED**<br><br>(Doc. 1)<br><br>**OBJECTIONS DUE: 10 DAYS** |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and XVI, respectively, of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g); 1383(c). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

## FACTUAL BACKGROUND

Plaintiff was born in 1958, has a high school education, and previously worked as a secretary. (Administrative Record ("AR") 43, 46.) On November 9, 2007, Plaintiff filed an application for DIB

and SSI, alleging disability beginning February 2, 2002, due to pain in her neck, shoulders, back, and right arm. (AR 34, 36.) Plaintiff's insured status expired on December 31, 2007. (AR 17) (noting that Plaintiff's earning records indicate that she has acquired sufficient quarters of coverage to remain insured through December 31, 2007).) Thus, for Plaintiff to be eligible for DIB payments, she must prove that she was disabled on or before December 31, 2007. Plaintiff was eligible for SSI the month after her application was filed. 20 C.F.R. § 416.335.

**A.    Medical Evidence**

Plaintiff worked as a secretary from May 1995 to February 2002. (AR 127.) Her job involved bending her head with repetitive movements of her right hand, such as writing and computer work. (AR 461.) In August 2000, while at work she experienced sudden severe pain from her neck shooting down to her right arm. (AR 461, 576.) She was subsequently awarded Workers' Compensation, but reported that the pain persists if she tries to use a computer or use her right hand repetitively for such activities like cooking or writing. (AR 462.) She also experienced lower-back pain prior to her injury at work. (AR 461.)

Plaintiff was treated by Dr. Joseph A. Narloch at the San Ramon Valley Orthopaedic Group in connection with her work injury. (AR 172-89.) In October 2000, Plaintiff underwent an electromyogram ("EMG") test that Dr. Narloch interpreted as showing moderate impingement in the median nerve of the right carpal tunnel ligament without any concomitant evidence of peripheral neuropathy, brachial plexopathy, or cervical radiculopathy in the right upper extremity. (AR 181.) Dr. Narloch also indicated that Plaintiff had mild impingement in the median nerve of the left carpal tunnel ligament. (AR 181.) Plaintiff continued treatment with Dr. Narloch for her carpal tunnel as well as pain in her shoulders. (AR 172-210.)

On November 5, 2002, Plaintiff was referred to Dr. Jackie T. Chan for complaints of severe pain from her shoulder down to her right hand. (AR 582.) Dr. Chan indicated that an EMG study was performed, which showed mild left carpal tunnel syndrome and moderate right carpal tunnel syndrome. (AR 582.) A November 25, 2002, a magnetic resonance imaging ("MRI") scan of Plaintiff's cervical spine showed significant abnormality at the C5-6 level. (AR 581.) The

radiological impression was listed as degenerative disc disease at C5-6 with a covered disc herniation to the right causing narrowing of the intervertebral foramen. (AR 581.) On January 29, 2003, Plaintiff underwent an intralaminar epidural injection administered by Dr. Chan. (AR 579.)

On May 1, 2003, Chiropractor Michael J. McClanahan, D.C., examined Plaintiff for approximately two hours and subsequently completed an extensive Qualified Medical Evaluation on May 15, 2003. (AR 299-307.) Chiropractor McClanahan noted that Plaintiff had been referred to an orthopedic surgeon, Dr. Farr, who found that Plaintiff was positive for bilateral carpal tunnel syndrome. (AR 303.) Chiropractor McClanahan reported Plaintiff's symptoms as intermittent slight right upper back pain, slight medial right elbow pain that radiates to the mid-forearm when performing heavy lifting, firm grasping, or repetitive activities such as typing or writing; slight to moderate right wrist pain when performing repetitive activities such as typing or writing; and occasional minimal lower back pain, non-industrial. (AR 305.) He opined that Plaintiff had a 50 percent loss in her lifting capacity due to her wrist disability and recommended that she perform no activity requiring repetitive writs flexion and extension, such as typing. (AR 305.)

On May 8, 2003, Plaintiff was again examined by Dr. Chan. (AR 578.) A repeat EMG study was conducted that did not show any abnormalities regarding carpal tunnel syndrome or any significant enervation changes from radiculopathy. (AR 578.) Dr. Chan prescribed Soma and Vicodin and advised that Plaintiff continue to follow up with her primary treating physician. (AR 578.)

On May 17, 2003, Plaintiff underwent a right shoulder MRI scan. (AR 576.) The radiologist provided an impression of thinning and irregular signal in the rotator cuff, from which a small tear could not be excluded. (AR 576.) Plaintiff also appeared to have mild degenerative changes of the acromioclavicular joint. (AR 576.)

On July 14, 2003, Plaintiff was examined by Dr. Chan who indicated that Plaintiff had myofascial neck and upper shoulder pain with right-sided small C5-6 disc herniation and possible right cervical radiculitis. (AR 574.) He also noted that Plaintiff had a history of bilateral carpal tunnel but that a recent repeated EMG study was negative. (AR 574.) Plaintiff was examined by

Dr. Chan on October 16, 2003. (AR 566.) Dr. Chan indicated similar impressions from the July examination, and prescribed Pamelor, Soma, and Vicodin. (AR 566.)

On February 8, 2005, Plaintiff was examined by Dr. Chan; Plaintiff reported that she was having more pain radiating down her right arm. (AR 560.) Dr. Chan recommended trigger point injections. (AR 560.) In December 2005, Plaintiff reported to Dr. Chan at examination that she was still experiencing neck and upper shoulder pain, but stated that Soma and Vicodin were useful. (AR 558.)

Medical records from the Stanislaus Health Service on June 31, 2006, show that Plaintiff was seen for complaints of lower back pain after her six nephews came for a visit. (AR 316.) On December 21, 2006, Plaintiff was examined for complaints of back pain after putting up Christmas lights. (AR 315.)

On January 8, 2007, Plaintiff followed up with Dr. Chan, who noted that Plaintiff had tenderness along the cervical paraspinal muscles, upper trapezius, levator scapular, and periscapular regions. Dr. Chan listed an impression of cervical and upper shoulder strain with myofascial pain, and a history of right C5-C6 disc herniation, and renewed Plaintiff's prescriptions for Vicodin and Soma. (AR 552.)

On May 21, 2007, Plaintiff was examined for lower-back pain, and she reported she had done some heavy yard work. (AR 314.) On June 26, 2007, Plaintiff was examined in connection with complaint of chronic lower back pain that had worsened after a fall from a swing. (AR 313.)

On February 17, 2008, Plaintiff was examined by Dr. Melanie Alarcio. (AR 461-65.) Plaintiff's chief complaints at that time included chronic back pain as well as right arm, shoulder, and neck pain. (AR 461.) On examination, Dr. Alarcio found that Plaintiff had a positive Tinel sign[1] on the right side, as well as mild thenar atrophy in her right hand when compared to her left hand. (AR 464.) Dr. Alarcio noted that Plaintiff had a positive straight leg raise at 60 degrees, and was also positive in the seated position. (AR 464.) Dr. Alarcio reported that Plaintiff had chronic back

---

[1] A Tinel sign is a "tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." *Dorland's Illustrated Medical Dictionary* 1741 (31st ed. 2007).

4

pain, which was likely related to degenerative joint disease. (AR 464.) However, as Plaintiff had a positive straight leg raise, Dr. Alarcio also recommended ruling out radiculopathy. (AR 465.) Additionally, Dr. Alarcio noted that Plaintiff had a history of cervical radiculopathy as well as carpal tunnel syndrome on the right upper extremity. (AR 465.) She opined that Plaintiff could be expected to stand and walk for six hours with frequent breaks in an eight-hour workday and could sit about six hours with frequent breaks. (AR 465.) She noted that Plaintiff would require the use of an assistive device with prolonged walking and on uneven terrain because Plaintiff developed severe, debilitating pain with prolonged walking. (AR 465.) Plaintiff could lift and carry only 10 pounds frequently. (AR 465.) She opined that Plaintiff should not bend, stoop, or crouch more than frequently. (AR 465.) Due to Plaintiff's right-sided carpal tunnel syndrome, she would have frequent manipulative limitations on the use of her right hand in reaching, handling, feeling, grasping, or fingering. (AR 465.)

On March 7, 2008, non-examining agency physician Ian Ocrant, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift up to 20 pounds; frequently lift 10 pounds; stand and/or walk with normal breaks about six hours in an eight-hour day; sit with normal breaks for a total of six hours in and eight-hour day; and had a limited ability to push and pull. (AR 467.) Dr. Ocrant indicated that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 468.) He also opined that Plaintiff was limited in her right upper extremities to frequent basic light manipulative activities, and only occasional bilateral overhead activities. (AR 468, 472.) On August 4, 2008, Brian Ginsburg, M.D., confirmed Dr. Ocrant's opinion, and stated that Plaintiff retained the ability to perform light work with postural and manipulative limitations. (AR 491.)

A September 2008 x-ray of Plaintiff's left hand indicated that she had degenerative osteoarthritic changes most prominent in the proximal interphalangeal joint space of the second finger without evidence of acute osseous abnormalities. (AR 606.) The x-ray of Plaintiff's right hand showed minimal osteoarthritic changes of the interphalangeal joint spaces without evidence of acute abnormalities. (AR 607.)

**B.     Agency Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 53-57, 62-64.) On September 2, 2009, ALJ Sandra K. Rogers held a hearing where Plaintiff testified that she had not worked since 2002. (AR 35.) She reported pain in both hands, indicating that doctors informed her that she has arthritis which is causing stiffness. (AR 35.) She indicated that it was pain in her hands and her back that precluded her from returning to work. (AR 35.)

According to Plaintiff, she lives at home with her partner, two daughters, and her mother. (AR 35.) Her daily routine includes waking up at 7:00 a.m. to take her medication and help her daughter prepare for school. (AR 36.) Once she drives her older daughter to school, she returns home to lie down because the medicine she takes in the morning makes her tired. (AR 36.) At approximately 10:00 a.m. she helps her youngest daughter prepare for afternoon Kindergarten. (AR 37.) Once she drops her youngest daughter at school, she returns home to lie in bed and stretch her feet. (AR 37.) She also picks the children up from school and washes dishes and laundry. (AR 37.) She reported that vacuuming and sweeping "bother her a lot," so she does not perform those tasks very often. (AR 37.) She finds taking a shower difficult because it requires the use of her hands to wash her hair, so she only does that twice a week. (AR 37.) She also cannot hold a blow dryer because her hands and her neck cause her pain. (AR 37.) She experiences constipation from her medications, and it results in pelvic-area pressure. (AR 38.) As treatment for her pain Plaintiff takes medication, soaks in Epsom Salt, and submerges her hands in paraffin wax. (AR 38.) Writing with a pencil causes her pain after approximately five to ten minutes. (AR 39.) Things tend to slip from her hands, and she tries not to reach overhead because it hurts her neck. (AR 39.) Plaintiff can reach with her arms, but it causes pain. (AR 39-40.) She can comfortably lift only about 10 to 15 pounds; she can sit for approximately 20 minutes and then she needs to move and stretch; she can stand for approximately 45 minutes. (AR 40.) Plaintiff testified that she could walk for approximately 10 minutes, but then she needed to lie down and stretch. (AR 41.) Plaintiff reported that her right shoulder blade causes intense, throbbing pain. (AR 42.)

A vocational expert ("VE") also testified, and characterized Plaintiff's past work as a secretary. (AR 43-45.) The ALJ asked the VE to assume a person of the same age, education and work experience as Plaintiff who could stand six hours a day or sit six hours a day; could lift and carry 10 pounds frequently and occasionally; could only do occasional bending, stooping and crouching; was able to do no more than frequently reaching, handling, feeling, grasping, and fingering with the right hand, no limitation on the left. (AR 43.) The ALJ questioned the VE whether such a hypothetical person could perform Plaintiff's past relevant work as a secretary. (AR 43.) The VE responded that Plaintiff could not perform her past relevant work because it would require constant use of both upper extremities. (AR 44.) The ALJ asked the VE whether Plaintiff would have transferable skills to jobs, given the hypothetical limitations posed, and the VE responded that Plaintiff would have transferable skills and would be able to work as a receptionist. (AR 44.)

Plaintiff's attorney asked the VE if a need for frequent breaks would affect Plaintiff's ability to perform receptionist work. (AR 44.) The VE responded that, assuming frequent meant more than normal, such a limitation would preclude work as a receptionist. (AR 44.) Plaintiff's counsel also asked whether it would affect Plaintiff's ability to perform work as a receptionist if Plaintiff was precluded from bilateral activity requiring repetitive wrist flexion and extension such as typing. (AR 44.) The VE responded that such a limitation would preclude work as a receptionist. (AR 44.)

**C.    ALJ's Decision**

On December 9, 2009, the ALJ issued a decision finding Plaintiff not disabled since February 2, 2002. (AR 17-24.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of February 2, 2002; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform her past relevant work as a secretary; (5) had acquired work skills from her past relevant work that were transferable; and (6) could perform alternative work in the national economy. (AR 17-24.) Plaintiff sought review of this decision before the Appeals Council. On March 7, 2011, the

Appeals Council denied review. (AR 1-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

**D.     Plaintiff's Complaint**

On May 9, 2011, Plaintiff filed a complaint in this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject Plaintiff's testimony; failed to sufficiently make findings regarding the transferability of Plaintiff's work skills acquired at her past work; and failed to appropriately weigh the medical evidence.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.    The ALJ Erred in Considering the Weight of the Medical Evidence**

    **1.    The ALJ Failed to Properly Consider the Opinion of Plaintiff's Chiropractor**

Plaintiff notes that Chiropractor McClanahan recommended that Plaintiff not perform activity requiring repetitive wrist flexion and extension. (Doc. 17, 7:23-24.) This opinion was consistent with MRI and EMG findings, and was also consistent with Dr. Alarcio's finding that, on examination, flexion of the right wrist created numbness in the medial palm. (Doc. 17, 7:27-28.)

9

1  Plaintiff argues that the ALJ failed to properly assess this evidence by dismissing it as not being from
2  an "acceptable" medical source.  Plaintiff maintains that this reasoning was not legally sufficient
3  because even evidence from other sources must be considered when determining the extent of a
4  claimant's limitation pursuant to Social Security Ruling ("SSR") 06-3p, and cannot be rejected
5  without stating specific, germane reasons for doing so.  (Doc. 17, 8:7-9:18.)

6  The Commissioner asserts that the ALJ's rejection of Chiropractor McClanahan's opinion
7  because it was not rendered by an "acceptable" medical source was reasonable, and supported by the
8  law.  (Doc. 20, 8:12-25.)

9  An ALJ is required to "consider observations by non-medical sources as to how an
10 impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.
11 1987).  Where an ALJ chooses to reject evidence from "other sources," who are not "acceptable
12 medical sources," the ALJ may not do so without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467
13 (9th Cir. 1996).  Additionally, the ALJ is required to provide specific, germane reasons for rejecting
14 the opinion of the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

15 Here, the ALJ rejected the findings and opinion of Chiropractor McClanahan solely on the
16 ground that "a chiropractor is not an 'acceptable' medical source."  (AR 22.)  In May 2003,
17 Chiropractor McClanahan provided a very detailed "Qualified Medical Evaluation" of Plaintiff's
18 condition.  (AR 299-307.)  He opined that

19  > based on my examination and records review that the patient['s] current work
     > restriction would best be described as a 50% loss in her lifting capacity due to her
20   > wrist disability.  I would also recommend a prophylactic work restriction of no
     > activity requiring repetitive wrist flexion and extension, such as typing.
21

22 (AR 305.)  He also opined that Plaintiff would not be able to return to her full time job because it
23 required hours of data entry and would aggravate her wrist condition.  (AR 305.)

24 Plaintiff argues that rejecting the findings of Chiropractor McClanahan without providing
25 any germane and specific reasons for doing so was error.  Moreover, the error was prejudicial
26 because the VE testified that a person precluded from repetitive wrist flexion and extension
27 activities, such as typing, could not perform the alternative work identified by the VE, i.e., a
28 receptionist.  (Doc. 17, 8:7-9:12.)

10

The Commissioner offers no meaningful rebuttal to Plaintiff's argument, and simply states that the "ALJ properly pointed out that a chiropractor is not an 'acceptable medical source' for purposes of the Social Security disability evaluation." (Doc. 20, 8:22-25.) The Commissioner notes that the chiropractor concluded that Plaintiff could not return to her job as a billing clerk, and then states that the ALJ came to the same conclusion. (Doc. 20, 8:20-21.) This does not address Plaintiff's argument that Chiropractor McClanahan specifically found that she should be precluded from repetitive wrist flexion and extension, which would ultimately preclude work as a receptionist. To the extent that the Commissioner argues that Plaintiff only saw Chiropractor McClanahan twice, this was not discussed by the ALJ as a reason to give the opinion less weight, and it may not be invoked as a basis to affirm the decision. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court agrees with Plaintiff. Rejecting a medical professional's opinion because it was not rendered by an "acceptable medical source" is not a legitimate basis to discount the opinion in total. Social Security Ruling 06-3p explains that, as set forth in 20 C.F.R. § 404.1527(b) and § 416.927(b), the agency will consider *all* relevant evidence when making a determination or decision about whether an individual is disabled. "Evidence includes, but is not limited to, opinion evidence from 'acceptable medical sources,' medical sources who are not 'acceptable medical sources,' and 'non-medical sources' who have seen the individual in their professional capacity. The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors." SSR 06-3p, 2006 WL 2329936 (Aug. 9, 2006).

The ALJ provides no discussion of Chiropractor McClanahan's opinion other than to state he is not an acceptable medical source. That is simply a statement of fact, and is not adequate consideration of the evidence itself. While the ALJ may evaluate the weight of the opinion based

1  on its source, here the ALJ appeared not to have given the opinion any consideration whatsoever.[2]
2  An ALJ has an obligation to explain why significant probative evidence has been rejected. *Vincent*
3  *v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Social Security Ruling 06-3p makes clear that
4  all "evidence" to be considered, even from medical sources who are not "acceptable" medical sources
5  under the regulations. SSR 06-3p. The ALJ must explain how the evidence was weighed – simply
6  pointing out that a chiropractor is not an acceptable medical source provides no reasoning for the
7  court to review. Moreover, as the VE testified that a preclusion from an activity requiring repetitive
8  wrist flexion and extension, such as typing, would preclude work as a receptionist, the failure to
9  consider Chiropractor McClanahan's opinion was harmful error.

### 2. The ALJ Failed to Provide Reasons for Rejecting a Portion of Dr. Alarcio's Opinion

The ALJ set out the findings of Dr. Alarcio in the decision as follows:

> [Plaintiff is] able to lift no more than 10 pounds frequently and no more than 10 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; requiring an assistive device from prolonged walking on uneven terrain; unable to perform frequent bending, stooping, and crouching; and with the right hand, unable to perform reaching, handling[,] feeling, grasping, or fingering.

(AR 22.) The ALJ concluded that the "opinion seems well-supported by the overall record and is therefore adopted to the extent indicated above." (AR 22.)

Plaintiff argues that, although Dr. Alarcio found Plaintiff could stand and walk for up to six hours and could be expected to sit about six hours, she also opined that in performing the sitting and standing, Plaintiff would require frequent breaks. (AR 465.) The ALJ, however, failed to note this in adopting the opinion, and therefore essentially rejected the frequent break qualification without setting forth any reasons. Further, in posing a hypothetical to the VE, the ALJ failed to include that in sitting and standing, Plaintiff would require frequent breaks. When Plaintiff's attorney questioned the VE whether the need to take frequent breaks would have an affect on Plaintiff's ability to perform

---

[2] In an unpublished memorandum decision, the Ninth Circuit determined that the ALJ erred in rejecting a chiropractor's opinion based on the fact that the chiropractor was not an "acceptable medical source." *Sanfilippo v. Astrue*, 274 Fed. App'x 551, 553 (9th Cir. 2008).

receptionist work, the VE indicated that, "[a]ssuming frequent means more than normal, I believe it would preclude the position." (AR 44.)

The Commissioner argues that the ALJ expressly rejected Plaintiff's own statements that she required frequent breaks, and thus the ALJ's rejection of Dr. Alarcio's opinion in this regard is proper because the ALJ may reject a physician's opinion when it is predicated on a claimant's statements that have been discredited. (Doc. 20, 7:23-28.) The Commissioner also asserts that the reviewing physician's opinions indicated that Plaintiff could sit, stand, and/or walk for up to six hours in an eight-hour workday with only normal breaks, as opposed to frequent breaks. (Doc. 20, 8:3-10.) Thus, the record supports the ALJ's rejection of this limitation. (Doc. 20, 8:3-10.)

The ALJ failed to discuss Dr. Alarcio's opinion that Plaintiff would require frequent breaks, and therefore rejected it without stating sufficient reasons. As the need for frequent breaks appears to affect whether Plaintiff is able to perform alternative work at Step Five, the failure to consider Dr. Alarcio's opinion in this regard was prejudicial to Plaintiff.

Had the ALJ determined that Dr. Alarcio's opinion as to Plaintiff's need for frequent breaks was predicated only on Plaintiff's statement, and concluded that Dr. Alarcio's opinion was entitled to less weight for that reason, this would be a legally sufficient reason to discount Dr. Alarcio's opinion. *See Bray*, 554 F.3d at 1228 (it is reasonable to discount a physician's opinion that was based on less than credible statements of the plaintiff). However, here, unlike in *Bray*, the ALJ did not make any finding that Dr. Alarcio's opinion was predicated only on Plaintiff's statement, and the ALJ stated no reason why Dr. Alarcio's opinion was discounted in this regard. This is not legally sufficient. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the ALJ erred because he neither explicitly rejected an examining physician's opinion, nor set forth specific legitimate reasons for crediting a non-examining physician's opinion). Because the ALJ did not actually set out reasons for rejecting Dr. Alarcio's opinion regarding Plaintiff's need for frequent breaks and because the Court finds that the ALJ's credibility analysis is not supported by substantial evidence, as discussed below, the ALJ erred in considering this portion of Dr. Alarcio's opinion.

**B.     Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's statements of pain and limitation. (Doc. 17, 9:20-11:11.) Plaintiff asserts that the ALJ's reference to incidents where Plaintiff reported that she had performed heavy yard work, fallen from a swing, played with her nephews, and put up Christmas lights demonstrated that Plaintiff had the back and neck problems she alleged, because all of these activities resulted in Plaintiff going to her doctor in pain. Plaintiff essentially argues that she demonstrated bad judgment in these instances and did things that were too hard for her. Plaintiff also asserts that none of these activities is probative of her subjective complaints related to repetitive wrist flexion and extension or calls into question Plaintiff's statement that she needs frequent breaks. (Doc. 17, 10:17-19.)

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, no finding of malingering was made; thus, the ALJ was required to set forth clear and convincing reasons, supported by substantial evidence in the record, for discrediting Plaintiff's statements. The ALJ noted that Plaintiff described her pain and limitations in her disability report as follows:

> I can't stand for very long, sitting really hurts, pain in my arm, pain in back, have to take breaks when I'm doing dishes, I get stooped over, pelvic area painful, trouble lifting and carrying things, I have weakness and [am] tired and dizzy.

(AR 21, 126.)

In considering these statements, the ALJ also noted that Plaintiff has been prescribed narcotics-based pain medication throughout the relevant period. (AR 21.) However, the ALJ refused to credit the degree of pain Plaintiff alleged based on some activities reported by Plaintiff:

> [T]he record reflects that she had a child in 2004, subsequent to her alleged onset date, a circumstance that casts a measure of doubt upon her complaints of marked pain and impairment. In particular, she would likely have known that in pregnancy she would add 30-40 pounds to her frame, thus exacerbating her back pain. And in taking on responsibility of a child, she would presumably have been aware that she would have to perform a significant amount of child care after the child was born.
>
> Along similar lines, treatment records otherwise suggest that the claimant's back pain has been critically tied to her tendency to engage in rather strenuous activities throughout the period at issue. For example, May 2007 treatment records relate her complaint of low back pain after doing heavy yard work, involving significant reaching with a trimmer (Exhibit 14F/5). Further, June 2007 treatment records indicate that she had back pain after falling from a swing and landing on her buttocks (Exhibit 14F/4). Earlier, October 2006 treatment records relate her complaint of worsening back pain following a visit with her six nephews (Exhibit 14F/7), and December 2006 treatment records relate her complaint of back pain after putting up Christmas lights (Exhibit 14F/6). Again, such circumstances cast doubt upon her complaints of marked pain and impairment.
>
> Likewise, the claimant's allegations that she has required frequent breaks throughout the day seem doubtful, in particular, in consideration of the pattern of significant exertion suggested above.

(AR 21.)

As it pertains to the ALJ's refusal to credit the extent of Plaintiff's pain testimony because Plaintiff chose to have a child during the time she claims to have experienced disabling pain, this is not a clear and convincing reason to discredit Plaintiff. Women may choose to have children at great

15

peril to their health and even their lives. Moreover, the ALJ makes an assumption that the pregnancy itself was a planned, deliberate decision. The Court finds no rational basis to discredit Plaintiff's pain testimony based upon the exercise of her fundamental right to bear a child.

To the extent that the ALJ regarded any of Plaintiff's reported activities as daily activities, such activities may be grounds for an adverse credibility finding only if the claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, putting up Christmas lights, visiting with nephews, falling from a swing, doing heavy yard work, or bearing children are not *daily* activities.

While the Court is required to give deference to the ALJ's credibility determination when it is supported by substantial evidence, *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990), because the ALJ improperly relied on Plaintiff's choice to have a child as a reason to discredit her lay statements, the Court cannot conclude how much this rationale impacted the ALJ's overall credibility assessment.

Additionally, Plaintiff's admission to performing heavy yard work on one occasion, which resulted in seeking medial treatment for pain, is not a clear and convincing reason supported by substantial evidence to discredit Plaintiff's allegations of her limitation and pain. There are no details regarding how long Plaintiff attempted to perform yard work, or the nature of the yard work performed other than it involved reaching with a trimmer. (AR 314.) Although the ALJ referred to visiting with nephews, swinging, and putting up Christmas lights as "significant exertion," there are no details about the nature of these activities. As such, there is no substantial evidence to support the ALJ's characterization that they involved "significant exertion." Finally, these appear to be isolated events resulting in Plaintiff seeking medical treatment due to pain, which tend to corroborate rather than detract from Plaintiff's complaints of pain and limitation.

Further, the ALJ found doubtful Plaintiff's claim that she needs to take frequent breaks during the day in light of the "significant exertion." (AR 21.) Again, it is not clear to what degree the ALJ relied on Plaintiff's choice to bear and raise a child as evidence of "significant exertion" that made her claims of pain less credible. As it relates to the isolated reports of "heavy yard work," visiting

her nephews, swinging, and putting up Christmas lights, there is no evidence in the record how long Plaintiff performed these activities or the nature of activities; thus, substantial evidence does not support the determination. Additionally, how engaging in these isolated activities casts doubt on Plaintiff's testimony that she requires frequent breaks is not readily apparent. The reasons stated for rejecting Plaintiff's credibility are not clear and convincing, and they are not supported by substantial evidence.

### C.     The ALJ's Consideration of Plaintiff's Transferable Skills

Plaintiff argues that the ALJ failed to expressly identify the work skills Plaintiff acquired at her past work that were transferable. While the ALJ explained that the VE testified Plaintiff acquired transferable skills from her past relevant work as a secretary that were transferable to that of a receptionist, neither the ALJ nor the VE identified any particular skills. (Doc. 17, 4:22-5:4.)

The Commissioner asserts that the ALJ properly relied on Plaintiff's statement of her job duties, in conjunction with the vocational expert's testimony, to identify transferable skills. (Doc. 20, 6:14-15.) Plaintiff had provided a statement indicating that her past job required her to input data for billing, help with payroll, perform customer service, train new employees, and perform filing, copying, and other office work. (Doc. 20, 6:17-19 (citing AR 127).) The VE characterized this work as that of a secretary, which is a skilled job. The VE then testified that Plaintiff had acquired skills from her work as a secretary that would transfer to receptionist work; the Commissioner asserts that the ALJ reasonably relied on the VE's testimony. Further, the VE's finding that Plaintiff had transferable clerical skills "is in accordance with agency policy, which identifies clerical work as an area where the acquired skills have 'universal applicability across industry lines.'" (Doc. 20, 6:25-27 (quoting SSR 82-41).)

The Ninth Circuit has held that an ALJ commits reversible error by determining that a plaintiff has acquired transferable work skills from past employers without expressly setting out the acquired skills. *Bray*, 554 F.3d at 1223-25. Specifically, the court reasoned that "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision . . . It is important that these findings be made at all levels of adjudication to clearly

establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court." *Id.* at 1223 (quoting SSR 82-41.) The *Bray* court also explained that, even where the ALJ relies on VE testimony in determining that a claimant has transferable skills from past work, the ALJ is still required to expressly identify in the decision what work skills are transferable and to what specific occupations those acquired skills apply. *See id.* at 1225.

Here, at the hearing the ALJ asked the VE whether Plaintiff would have transferable skills to other jobs within the limitations of the hypothetical posed by the ALJ. The VE testified that "there would be transferability to reception positions." (AR 44.) In the written decision, the ALJ stated only that Plaintiff has acquired work skills from past relevant work and indicated that the "vocational expert specifically testified that the claimant has acquired transferable skills from her past relevant work as a secretary to that of receptionist." (AR 22.) The ALJ did not identify Plaintiff's work skills or make any findings supporting the transferability of Plaintiff's skills. The Commissioner's argument that the ALJ reasonably relied on the VE's testimony that Plaintiff had acquired transferable skills does not vitiate the ALJ's responsibility to expressly identify those skills in issuing a decision. *Bray*, 554 F.3d at 1223-25. The Court may not review Plaintiff's statements of the tasks she performed in her past work and determine what of those skills were transferable in the absence ALJ findings in this regard. *Bray*, 554 F.3d at 1226 ("The district court chose to review the transferable skills finding based on what it assumed the ALJ to have determined, but meaningful review of an administrative decision requires access to the facts and reasons supporting that decision."). The Court finds that the ALJ erred in failing to expressly set forth Plaintiff's transferable work skills, which hinders judicial review. *Bray*, 554 F.3d at 1226 (district court erred in reviewing the transferable skills finding based "on what it assumed the ALJ to have determined," but concluded that "meaningful review of an administrative decision requires access to the facts and reasons supporting the decision"). As the case should be remanded on the grounds stated above, the ALJ's should undertake renewed consideration of Plaintiff's transferable skills and expressly identify them.

**D.     Conclusion**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 2011 F.3d 1172, 1179 (9th

Cir. 2000); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). Here, remand is appropriate for the ALJ to: (1) reconsider the opinions of Dr. Alarcio and Plaintiff's chiropractor, Dr. McClanahan, and if necessary, reevaluate Plaintiff's residual functional capacity; (2) reconsider Plaintiff's credibility; and (4) expressly determine at the Fifth Step of the sequential analysis what job skills Plaintiff has acquired from her past work that are applicable to the work of a receptionist.

## CONCLUSION AND RECOMMENDATION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence and therefore RECOMMENDS that the decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within ten (10) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Responses to objections shall be filed, and served on all parties, within ten (10) days after service of the objections. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 20, 2012**            /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE